## Case No. 8,251.

### The LEO.

[5 Ben. 261.][1]

District Court. E. D. New York. June 24, 1871.[2]

COLLISION AT SEA—STEAMER AND SCHOONER—SPEED—FOG HORN.

1. A schooner was sunk by a steamer at night, some fifteen or twenty miles off Sandy Hook. The night was boisterous and dark, and, as the steamer claimed, foggy. The steamer was running six or seven knots an hour, although, as she claimed, an approaching vessel could not be seen more than a length ahead. No fog horn was blown on board the schooner, and she claimed that the night, though dark, was not foggy. Held, that the steamer was in fault in keeping up such a rate of speed in such a locality on such a night, whether it was foggy or not.

2. The schooner could not be held in fault for the omission to blow a fog horn, for the reason that a horn, if blown, would not have been available, on such a night, to give any useful notice to the steamer.[2]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Reversed in Case No. 8,254.]

In admiralty.

BENEDICT, District Judge. This is an action brought to recover the damages caused by the sinking of the schooner Saxon by the steamship Leo, in a collision which occurred some fifteen or twenty miles below Sandy Hook, on the night of the 13th of November, 1870.[3] The steamer, at the time, was bound to the southward, and the schooner was under double-reefed foresail and jib, running before the wind, which was south-southwest. The night was dark, and the sea high, and the wind a moderate gale. Both vessels were carrying the proper lights, and a proper lookout is proved by each vessel. The presence of the schooner was not known to those on the steamer till the vessels were close together, and the schooner was struck upon her port quarter before the engine of the steamer could be reversed. The effect of the blow was such that the schooner very shortly rolled over, but being loaded with lumber she floated, and the crew clung to her till morning, when they were taken off by a pilot-boat.

The charge against the steamship is that she was running in a dark and thick night, at too high speed and without a proper lookout. The defence is that there was a dense fog, and that the accident arose from the failure of the schooner to blow a fog horn.

The evidence, as to the presence of fog, and as to the darkness of the night, is conflicting, but I conclude from the weight of the evidence that the night was very dark and thick, so that lights of approaching vessels could with difficulty be seen at any considerable distance; and I hold the steamer to be in fault for keeping up her full speed on such a night, in such a locality, whether there was or was not fog. The assertion of the steamer is that an approaching vessel could not be discovered more than a length ahead, and yet she kept up her full speed, which was six or seven knots, although her master says she could have been kept on her course at a speed of two knots. After the collision she was more careful, and ran for some time under one bell.

By reason of this neglect to reduce her speed, the steamer must be held liable in this action. The only doubt I have had in the case is as to the liability of the schooner also, because of the failure to blow a fog horn. The answer to this on the part of the schooner is that although the night was dark and thick, there was no fog, and, consequently, no obligation to blow a fog horn.

I have examined the evidence with some nicety, and, looking at the whole case, am satisfied that the schooner cannot be held guilty of fault for the omission to blow a fog

[3] [The date of this collision was November 30, 1869. In the printed copy of Judge Benedict's opinion filed with the records of the court, the date is given as November 30, 1870, which has been changed with a pen to 1869.]

horn, for the reason that a horn, if blown, would not have been available, on such a night, to give any useful notice to the steamer. It is proved by the claimants to have been clear weather at 7½ p. m., when the steamer passed the lightship, the wind then blowing from the south and west, and freshening. At 10½ p. m. it was blowing heavily from south-southwest, and by 2 p. m. blew from north-northwest. At the time of the collision rain was falling, according to the evidence for the steamer, and the wind south-southwest. These circumstances are calculated to raise doubts as to the night being one to be properly termed foggy, but there is no doubt that it was a bad night. "About as bad a night as I ever saw," says the engineer of the steamship. The value of the fog horn signal must depend upon the weather, and the obligation to blow it cannot attach, if it be clearly shown that there were attending circumstances which would render it a useless precaution.

Doubts have been expressed as to the ability to hear a fog horn on a steamer at any time when the steamer is in full motion (The Bay State, 18 How. [59 U. S.] 92), but the truth I take to be that it depends upon circumstances whether the horn can be made of use. Under some circumstances, a hail even can be heard at a long distance by attentive ears on a steamer in full motion. Under other circumstances, a loud horn cannot be heard. On this occasion the night was undoubtedly boisterous. The evidence shows that the loudest hails made after the collision by those on the wreck, whose lives were apparently dependent on making themselves heard, failed to reach the steamship, although she must then have been near by, and at times still. The loud hails of the chief mate of the steamship directed to those on the wreck, were also unheard by them. They could not even hear the whistle and the blowing steam, both of which sounded loudly after the accident. These circumstances show quite plainly, to my mind, that a fog horn, if blown on the schooner, would have been of no use. The whistle of the steamer, which is shown to have been blowing while the schooner was approaching, was of no use, for it was not heard by the hands on the schooner till the steamer was on the point of striking them.

My conclusion, therefore, is that the schooner cannot be held guilty of fault for omitting to blow a fog horn, and that the steamship must be held solely responsible, because of her unlawful speed.

[A final decree awarding the libelant $10,849.41 damages and $416 costs was entered December 5, 1871. The case was again heard upon a question of taxation of witnesses' fees in Case No. 8,252. An appeal was taken by the claimant, and the decree above reversed by the circuit court on the ground that both vessels were in fault. An apportionment of the damages was ordered. Id. 8,254. The case was again heard upon a libel of the seamen for wages. Id. 8,253.]